KATE .COOK *et al. vs.* JAMES COOK *et al.*

MAY 22, 1913.

PRESENT: Johnson, C. J., Parkhurst, and Sweetland, JJ.

*(1)   Wills.   Construction.*

A will should be so construed as to avoid partial intestacy if such construction is natural and reasonable and the intent of the testator appearing from the will taken as a whole, rather than any particular technical word or phrase, should govern.

*(2)   Wills.   Construction.   "Savings Banks."*

A holographic will, by which testator bequeathed and devised specifically all of his property and which contained no residuary clause, after enumerating all of his real and personal property, bequeathed to his wife "one-fifth part of the money in Business Bank Account" and also "one-half of all money I have in Saving Banks":—

*Held,* that the term "Saving Banks," included not only money in savings banks thus entitled, but also money on deposit in the participation accounts of trust companies having savings departments.

*Held,* further, that the bequest was not affected by the fact that negotiable and contingent certificates had been issued by a trust company in exchange for the deposit of testator on participation account, upon the reorganization of the trust company, the manner in which the deposit was evidenced being immaterial.

BILL IN EQUITY for construction of will.   Certified under Gen. Laws, 1909, cap. 289, § 35.

JOHNSON, C. J.   This is a bill in equity brought by Kate Cook, William Cook, Charlotte I. Cook, Williminer Cook, Kate Cook and Ann Cook (the last four being minors who bring this bill through their next friend and mother by adoption, Kate Cook), all of the city and county of Providence, in said State, Willie Collins, a minor, by his next friend and father, Harry L. Collins, of the city of Boston, in the Commonwealth of Massachusetts, Kate Cook Collins, also of said Boston, and Janet Cook Crowley, of the town of Greenwich, in the State of Connecticut, against James Cook and Charlotte Cook Sayles, both in their individual capacity

and in their capacity as administrators with the will annexed of William Cook, deceased, and against Allison Cook, a minor and son of said James Cook, said Allison Cook and James Cook being residents of said Providence, and the said Charlotte Cook Sayles being a resident of the city of Central Falls, said county of Providence and State of Rhode Island. Said cause has been certified to this court by the Superior Court as ready for hearing for final decree, under cap. 289, § 35, Gen. Laws, 1909.

The bill sets out: the death of William Cook; a copy of his will; the probate thereof; the declination of the executor therein named; the appointment of Charlotte Cook Sayles and James Cook as administrators with the will annexed; a prior request by the parties to this bill to the Supreme Court for an opinion on various matters involving certain questions pertaining to the will and estate of William Cook, deceased, and refers to the opinion thereon reported in 30 R. I. 494. It further sets out the filing of a bill of interpleader against all the parties to this suit by the Citizens Savings Bank, and a final decree therein by consent of certain of the parties, but not of Kate Cook, and certain proceeding thereunder relative to a certain deposit in the Citizens Savings Bank, resulting in the payment to one Sidney F. Whipple of said deposit; also certain other allegations not material upon the question of construction of the will.

The complainants further represent that they and the defendants are all of the children, heirs at law and persons interested under the said will of William Cook, deceased.

Service was made upon all the respondents. Howard T. Metcalf was appointed by the Superior Court guardian *ad litem* of the aforesaid minors Charlotte I. Cook, Kate Cook, Williminer Cook and Ann Cook, and James Cook was appointed guardian *ad litem* of his infant son, Allison Cook.

The respondents, James Cook and Charlotte Cook Sayles, in their individual capacity and in their capacity as administrators with the will annexed of William Cook, and James

Cook in his capacity as father, next friend and guardian *ad litem* of Allison Cook, a minor, and Howard T. Metcalf, guardian, *ad litem* of Charlotte I. Cook, Williminer Cook, Kate Cook and Ann Cook concurred in the amended bill and joined in the prayer for the construction of said will.

By "Exhibit A" attached to said bill, a copy of said will was set forth as follows: "Exhibit A. Copy of Will of William Cook, of Providence, R. I. In the name of the Lord Amen.

"I William Cook of the City and County of Prov. in the State of R. I. being of lawful age, of sound and disposing mind, calling to mind the frailty and uncertainty of life, and being desirous of disposing of that property which God has blessed me with, do make publish and declare this and this only, to be my last will and testament.

"FIRST—I give and bequeath to my wife Kate Cook the use of my house and furniture and lands not otherwise disposed of, as long as she lives. Said house and lands are at 735 Smith Street, Prov. I also give and bequeath to her one-fifth part of my building at 14 No. Main Street, Prov. Also I give her one-fifth part of the business carried on there, also one-fifth part of the stock, fixtures, leases and money in Business Bank Account. I also give her one-half of all money I have in Saving Banks.

"SECOND—I give and bequeath to my oldest daughter Charlotte Cook Sayles and her heirs forever, my house and lands not otherwise disposed of, at 735 Smith St., Providence, also the furniture in said house. Said property to become hers at once but my wife to have sole use of said property till her death. I also give and bequeath to my daughter and her heirs, one-fifth part of my building at 14 No. Main St. Prov. to be hers and her heirs forever. Also I give her one-fifth part of the business carried on there, also one-fifth part of the stock, fixtures, stock, leases there and other places. Also one-fifth parts of money in Business & Bank Account. I also give her one-quarter of all moneys I have in

Saving banks. I give her more so she will make a home for my adopted children, one of them being feeble-minded.

"THIRD—to my son James Cook and his heirs, I give and bequeath one-fifth part of my building at 14 No. Main St. Prov. also one-fifth part of the business carried on there also one-fifth part of the stock, fixtures and all leases, and money in business & bank account. I also give him all my carriages harnesses and automobile.

"FOURTH—to my son William Cook I give and bequeath to him and his heirs one-fifth part of my building at 14 No. Main St. Prov. Also one-fifth part of the business carried on there. Also one-fifth part of the stock, fixtures and leases and business bank account.

FIFTH—to my adopted daughter Charlotte I. Cook, and her heirs I give and bequeath one-fifth part of my building at 14 No. Main St. Prov. Also one-fifth part of the business carried on there also one-fifth part of the stock, fixtures and leases and money in business bank account. I also give her my diamond ring. I also give her one-quarter of all moneys I have in Savings Banks. I also give and bequeath to my adopted daughter Charlotte I. Cook and heirs forever three (3) lots of land situated on the northerly side of Hilltop Avenue Providence. Said lots are marked 34, 35, 36 on the plat from 7 Grosvenor.

"SIXTH—to my daughter Kate Cook Collins I give the sum of ten dollars, she having already got five thousand dollars from me.

"SEVENTH—to my daughter Janet Cook, I give the sum of ten dollars, she being in no need of my property.

"EIGHTH—to my adopted daughter Kate Cook and her heirs I give and bequeath three lots of land on the southerly side of Hilltop Avenue, Providence. Said lots are numbered 9–10–11 on the plat.

"NINTH—to my adopted daughter Willimina Cook, I give and bequeath to her and her heirs three lots of land on the southerly side of Hilltop Avenue Prov. said lots are numbered 6–7–8 on the plat.

"TENTH—to my adopted daughter Ann Cook I give and bequeath to her and her heirs two lots of land on the northerly side of Hilltop Avenue Providence, said lots being numbered 33 and 32 on the plat.

"ELEVENTH—to my grandchild, Allison Cook and his heirs I give and bequeath two lots of land on the northerly side of Hilltop Avenue Providence said lots being numbered 30 and 31 on the plat.

"TWELFTH—to my grandson Willie Collins I give my gold watch and chain and my sword and guns and my books.

"THIRTEENTH—I appoint the Treasurer of the Rhode Island Hospital Trust Co. bank to be executor of this my last will and I ask him to see that my grave is lined top bottom and sides with stone slabs. The money for which as well as for his work to come out of my Saving bank money before being divided.

"In witness whereof I hereinto set my hand and seal.

"WILLIAM COOK (Seal).

"Signed, sealed, published and declared by the said William Cook as and for his last will and testament in presence of us who at his request and in his presence and in presence of each other, have subscribed our names as witnesses hereto.

"JOSEPH DELEVGON (Seal)
"JOHN METZGER (Seal)

"Dated at Providence R. I., 28 February 1908."

The bill also states: "Third. That at the time of his death on May 27, 1908, said William Cook had on deposit in his own name (apart from deposit of $1,516.95 in the Industrial Trust Company's checking or business bank account) the following accounts:

(a) Industrial Trust Company participation account............................. $2,817.05
(b) Rhode Island Hospital Trust Company participation account................ 4,083.14
(c) Peoples Savings Bank.................. 2,914.16

(d)  Union Trust Company (negotiable cer-
        tificates 2277, 2278 and 2279, and con-
        tingent certificates 2277, 2278 and 2279,
        all of which certificates were given in
        exchange for a deposit in the participa-
        tion account of said Union Trust Com-
        pany at the time of the re-organization
        of said Company)...................   2,875.99

(e)  Citizens Savings Bank.................   2,791.11
                                             _____

        Total...........................$15,481.45"

The request for construction is as follows:

"Tenth.   The complainants in this cause desire the con--
struction of said will of William Cook, deceased, and re--
spectfully request this Court to determine the following:
questions:

"a.   Under the first clause of the will of William Cook,
does his widow, Kate Cook, take one-half the entire deposits.
in the Peoples Savings Bank, and in the participation ac-
counts of the Industrial Trust Company and Rhode Island
Hospital Trust Company and one-half of said negotiable
and contingent certificates in Union Trust Company, or does
she take simply one-half of the deposit in the Peoples Savings.
Bank alone?

"b.   Does Kate Cook, widow of William Cook, under said
first paragraph of the will of said William Cook, deceased,
take any share in the said deposit in the Citizens Savings.
Bank?"

We do not suppose that in order to be a "saving bank" or
"savings bank" it is necessary that the name of the corpora-
tion should express the fact that it is such.   The mere
designation by the name of savings bank we apprehend is.
immaterial.   Its character must be determined by a con-
sideration of its organization, powers and mode of doing
business provided in the incorporation act.   Thus, where a
loan and trust company incorporated to do a trust business,
a safe deposit business, and a general banking business, has.

a savings department in which term savings deposits are received upon a specified rate of interest, the corporation, as respects its term savings deposits, has been held to be *de facto* a savings and loan corporation, whether so *de jure* or not, and to have been properly assessed for taxation upon the amount of credits, claims, debts, and demands due, owing, or accruing for or on account of such term deposits. *Los Angeles v. State Loan and Trust Co.*, 109 Cal. 396.

The court, p. 404, says: "Respondent saw proper to classify its business, and designated one part as the 'savings department,' and named certain hours for that business. It received a large amount of deposits in that department in full accordance with one of the modes of conducting a savings and loan corporation as authorized by the statute. It gave to the depositor a pass-book which denominated the deposits therein entered as 'savings deposits.' It assumes to be a savings bank *pro tanto*, at least, in obtaining the deposits, and should not be heard to say that it is not when the question of taxation arises, whether it arises between the bank and the State or between it and the depositor."

In *State* v. *Lincoln Savings Bank*, 82 Tenn. 42, also a suit for the collection of a tax, the court, p. 43, says: "It is true that in the Act of January 11, 1869, incorporating the defendant, it is named the 'Lincoln Savings Bank;' but the mere designation of it by this name does not make it a savings bank. To determine its character we must look to its organization, powers and mode of doing business, provided in the incorporation act."

In the matter before us, however, we do not apprehend that we are necessarily concerned as to the organization, powers and mode of doing business prescribed in the acts of incorporation of the trust companies named in the bill. The fact that said trust companies have on participation account the deposits of the testator is set out in the bill. Whether they were empowered under their charters to have savings accounts, whether called participation accounts or otherwise, is not the question before us. The question which

we have to consider is whether said deposits are included in the words "all money I have in saving banks." Did the testator so intend?

The fact that these deposits were made in what are called trust companies does not, in our opinion, affect their nature. It is well known that trust companies, such as those set out in the bill, have long maintained savings or participation departments, and that their rules and manner of doing business connected with such departments are practically the same as those under which savings banks do business.

In practically every essential respect, a deposit in an institution called a savings bank is the same as a deposit in the participation account of a trust company such as those involved in this bill. Also, the rules, regulations and methods of doing business in the participation branch of trust companies are entirely different from those of the checking or business department. In the latter, the money is always on call, it draws a smaller percentage of interest and no notice is necessary to enable the depositor to draw the money.

The testator himself divided his deposits throughout his will between what he calls "business bank account" and "saving banks" or "savings banks." What did he mean by these expressions? He had, as appears from the third paragraph of the amended bill of complaint, a deposit of $1,516.95 in the checking account of the Industrial Trust Company. All his other deposits were in savings banks and the participation accounts of trust companies. Is it not properly inferable that he intended by these expressions to give to his wife one-fifth of the Industrial Trust Company checking account, under the name of a business bank account, and one-half the money in the participation accounts of the Industrial Trust Company and the other trust companies, under the words, "all money I have in Saving banks"? Is it probable that in thus providing for his wife, he did not realize the difference between a business bank account and a savings or a participation account? He was

a man of mature age and had been in active business for many years. This will was entirely in his own hand writing and was evidently prepared without the advice of counsel. It is not drawn with the technical accuracy that might be expected had it been prepared by an experienced attorney. From a careful reading of the will itself and a consideration of the circumstances under which it was drawn, it seems probable that when he used the term "business bank account" he meant the ordinary checking account, and when he used the words "money in saving banks" he meant savings accounts in the various institutions where he had deposits, whether such banks were entitled savings banks or trust companies. It does not seem probable that a man of Mr. Cook's age and experience could have confounded his two accounts, or that he meant by the expression "business bank account" anything other than the deposit in his checking account in the Industrial Trust Company.

From an inspection of the will itself, it appears that all of Mr. Cook's property is bequeathed and devised specifically. He makes provision for all his estate, real and personal, and the will has no residuary clause. He provides that the fees of the executor and for the lining of his grave shall be taken from his savings bank money before being divided. Having thus enumerated all the parts of his real and personal property and having specified his cash assets as "business bank account" and "money in saving banks," the gift to his wife in the clause referred to can easily be determined. What becomes of these participation accounts if they are not included in his expression "money in saving banks"? They certainly cannot be considered "business bank accounts."

If, therefore, they are not included under the words "all money I have in saving banks," then they are not disposed of by the will. If such interpretation be given his will, we find Mr. Cook making specific devises and bequests of every article of his property, real and personal, except these particular deposits in the participation accounts referred to. It seems illogical that such a conclusion should be drawn or

such an interpretation be placed on his will as would admit of such a conclusion, especially after Mr. Cook has used diligent care to enumerate his devises and bequests in detail.

(1) The general rule is to so construe a will as to avoid partial intestacy, if such construction is natural and reasonable. *Staples* v. *D'Wolf,* 8 R. I. 74; *Pell* v. *Mercer,* 14 R. I. 412, 417; *Smith* v. *Greene,* 19 R. I. 558, 560; *Fiske* v. *Fiske,* 26 R. I. 509, 512; *Woodward* v. *Congdon,* 34 R. I. 316, 323.

The intention of the testator is to be ascertained and be given effect if possible consistently with established rules of law. The court should place itself in the position of the testator as nearly as may be, and endeavor, if possible, to give his language such interpretation as will carry out his intention. In other words, the intent of the testator as it appears from his will taken as a whole, rather than any particular technical word or phrase, should govern. *Bailey* v. *Brown,* 19 R. I. 669; *Boardman, Petitioner,* 16 R. I. 131; *Woodward* v. *Congdon, supra.*

(2) In our opinion, therefore, the bequest in the first paragraph of the will to said Kate Cook of "one-half of all money I have in Saving Banks," includes not only money in savings banks, thus entitled, but also money on deposit in the participation accounts of the trust companies named in the bill. As to the negotiable and contingent certificates given in exchange for a deposit of said testator on participation account in the Union Trust Company at the time of the reorganization of said company, we do not think that the issue of these certificates affected the operation of the bequest in question upon the deposit in said Union Trust Company. The bequest is of the money in "Saving Banks," and as, in our opinion, the language of the bequest covered the deposit in said Union Trust Company, we do not consider it at all material as to how said deposit was evidenced, whether by a pass-book or certificates. The mere exchange of negotiable and contingent certificates under a reorganization of the trust company could not change the nature of the deposit, and would not cause an ademption of the legacy. See *In re Peirce for an Opinion,* 25 R. I. 34.

Our answer to the first question therefore is, that under the first clause of the will of William Cook, his widow Kate Cook, takes one-half of the deposits in the Peoples Savings Bank, and also one-half of the deposits in the participation accounts of the Industrial Trust Company, The Rhode Island Hospital Trust Company and the Union Trust Company.

As to the second question our answer is that by the terms of the first paragraph of said will said Kate Cook takes one-half of the deposit in the Citizens Savings Bank, for the same reason that she takes one-half of the deposits referred to in the answer to the first question, provided the testator owned said deposit at the time of his death.

Of course we can only construe the will. We cannot decide here whether or not William Cook owned said deposit in the Citizens Savings Bank at the time of his death. The will took effect upon his death and if he owned said deposit at that time, one-half thereof went by the terms of said first paragraph of his will to said Kate Cook.

A decree in accordance with this opinion may be presented in order that the same may be approved by this court and ordered to be entered in the Superior Court.